MERRITT, Circuit Judge.
 

 This secured claim case arises under the newly revised Chapter 13 of the Bankruptcy Code which sets out principles for courts to follow in composing the debts of distressed wage earners. It is a case of first impression under the new Code. The “confused state of the law concerning the treatment of secured claims” caused major problems under the old Chapter XIII, 5 Collier on Bankruptcy § 1325.01[E] at 1325-14 (1982), and led to a radical revision of the treatment of wage earner plans in the new Code. We first explain the legal framework in which the case arises and then deal with the facts and applicable law.
 

 I. THE STATUTORY CONCEPT UNDERLYING TREATMENT OF SECURED CLAIMS
 

 Chapter 13 of the new Code is considerably more helpful to debtors than either the old Chapter XIII or the old or new straight bankruptcy provisions under Chapter 7.
 
 See
 
 Epstein, Chapter 13: Its Operation, Its Statutory Requirements as to Payment to and Classification of Unsecured Claims, and its Advantages, 20 WashbüRN L.J. 1 (1980). Creditors no longer have to agree to the Chapter 13 plan; it is court imposed. Business debtors are eligible to file now. Creditors may not file an involuntary proceeding as in Chapter 7 cases. Creditors are not necessarily entitled to full but delayed payment as under the old Chapter XIII but only to an amount equal to what they would have received in a straight bankruptcy. The stay and retention of property provisions are more protective than Chapter 7; and Chapter 13 also provides more favorable treatment of liens, defaults and taxes than Chapter 7.
 

 On the question of discharge, under section 1328(a) of the new Chapter 13, the only debts excepted from discharge are alimony and child support, claims not included in the plan and certain long-term obligations voluntarily excepted from the plan. Thus except for alimony and child support the nine exceptions to discharge, including fraud, applicable to Chapter 7 are not applicable to Chapter 13. A debtor who obtains credit by
 
 *429
 
 fraud or other dishonesty receives a discharge under Chapter 13 but not under Chapter 7.
 

 The concept behind the treatment of secured claims under the new Chapter 13 is fairly simple. The total claim of the secured creditor which is to be allowed is divided into two parts, the secured portion of the claim and the unsecured portion. These two are called in section 1325 the “allowed secured claim” and the “allowed unsecured claim.”
 
 [1]
 
 The secured portion of the total claim represents the present value of the collateral and the unsecured portion is the remainder, i.e., the amount the allowed claim exceeds the value of the collateral. The House Report on the new Code explains the reason for this division:
 

 Most often in a consumer ease, a secured creditor has a security interest in property that is virtually worthless to anyone but the debtor. The creditor obtains a security interest in all of the debtor’s furniture, clothes, cooking utensils, and other personal effects. These items have little or no resale value. They do, however, have a high replacement cost. The mere threat of repossession operates as pressure on the debtor to repay the secured creditor more than he would receive were he actually to repossess and sell the goods.
 

 Current chapter XIII does little to recognize the differences between the true value of the goods and their value as leverage. Proposed chapter 13 instead views the secured creditor debtor relationship as a financial relationship, and not one where extraneous, non-financial pressures would enter. The bill requires the court to value the secured creditor’s interest. To the extent of the value of the security interest, he is treated as having a secured claim, entitled to be paid in full under the plan, unless, of course, he accepts less than full payment. To the extent that his claim against the debtor exceeds the value of his collateral, he is treated as having an unsecured claim, and he will receive payment along with all other general unsecured creditors.
 

 H.R. No. 95-595, 95th Cong., 2nd Sess. I,124,
 
 reprinted in
 
 [1978] U.S.Code Cong. & Ad.News 179, 301.
 

 Section 1325(a)(5)(B) seems to require the Bankruptcy Court to assess interest on the secured claim for the present value of the collateral (if it is not to be paid immediately) in order not to dilute the value of that claim through delay in payment. In effect the law requires the creditor to make a new loan in the amount of the value of the collateral rather than repossess it, and the creditor is entitled to interest on his loan.
 
 [2]
 

 
 *430
 
 II. THE FACTS OF THE INSTANT CASE
 

 The instant case involves an automobile loan in the principal amount of $5,659, which was to have been paid over 42 months at $233 per month, making a total debt of $9,799, consisting of interest at 21% in the amount of $2,922 and insurance and other charges of $1,217. Having made no payments under the contract, the debtor, a divorced woman with three children, filed a Chapter 13 complaint two months after incurring the debt. The judge found that although the debtor “puffed” her income somewhat on her loan application, the basic reason for her default was a reduction in wages. He declined to find that she acted dishonestly in securing the loan. She filed a payment plan asking to reduce the monthly payment on the automobile from $233 to $157 and to extend the time to 60 months. The judge at the confirmation hearing found that her conduct in securing the loan and immediately filing under Chapter 13 for a reduction in payments made the proposed plan lack good faith. He indicated he would approve a plan that continued monthly payments at $233 until the contract debt was paid in full, and the debtor amended her plan to embody this proposal.
 

 The Bankruptcy Court then wrote an opinion in which it apparently changed its mind. The reasons for the change are not clear. At one point in its written opinion, in line with its statements at the confirmation hearing, the Court indicates that it is confirming a plan paying 100% of the Bank’s claim. At another point in the written opinion the plan seems to contemplate a secured claim for the present value of the collateral, $4,800, plus an unsecured claim for the difference in this figure and the total contract price, plus 10% interest on the secured claim. The general thrust of the opinion seems to be to require full payment under the original contract. Yet at the end of its opinion the Court orders payment of a secured claim of $4,800 (the value of the collateral), plus interest on this amount at a 10% rate, plus an unsecured claim of $2,171.74, a figure that omits any contract interest. The Court states that it is subtracting the contract interest because under Chapter 13 contract interest stops upon the filing of the petition. The District Court affirmed.
 

 III. THE APPROPRIATE PROCEDURE TO FOLLOW IN A SECURED CLAIM CASE
 

 Although there are as yet few court of appeals and district court cases touching on the new Chapter 13, there are already many bankruptcy court cases. A reading of those cases suggests a composite set of procedures followed implicitly by most bankruptcy courts in secured claim cases:
 

 1. Determine the present value of the collateral under the secured claim provisions of 1325.
 

 2. Determine the amount allowable under applicable law to the creditor by virtue of the debtor’s default including unpaid principal, finance charges, interest earned prior to filing but unpaid, etc.
 

 3. Subtract the amount of the secured claim determined in Step 1 from the amount calculated in Step 2. This represents the unsecured claim.
 

 4. Determine the appropriate interest rate to be applied to the secured claim, as more fully discussed below. Add the secured claim and the interest to be paid.
 

 5. Determine based on the debtor’s ability to pay and his conduct how much of the “allowed unsecured claim” should be paid, provided this amount is not less than the value the creditor would receive in straight bankruptcy.
 

 6. Determine whether the debtor’s proposed plan, based on his ability to pay and conduct, is reasonable and in good faith.
 

 
 *431
 
 7. Confirm, deny confirmation or suggest modifications in the plan depending on the outcome of step 6.
 

 This procedure seems to fit well with the statutory framework and statutory purpose in Chapter 13 cases. It eliminates the confusion under the old law and had the Bankruptcy Court followed it, we would not have the present confusion about what it intended to do in this case. We reverse and remand the case to the Bankruptcy Court with instructions to follow this procedure.
 

 IV. INTEREST RATE TO BE ALLOWED ON SECURED CLAIM
 

 Rather than tying the interest rate to an arbitrary ten per cent rate, the Bankruptcy Court’s solution, or some other arbitrary rate, we hold that in the absence of special circumstances bankruptcy courts should use the current market rate of interest used for similar loans in the region. Bankruptcy courts are generally familiar with the current conventional rates on various types of consumer loans. And where parties dispute the question, proof can easily be adduced.
 

 The reason we do not use an arbitrary rate is that such a rate may vary widely from the current market rate. The theory of the statute is that the creditor is making a new loan to the debtor in the amount of the current value of the collateral. Under this theory, the most appropriate interest rate is the current market rate for similar loans at the time the new loan is made, not some other unrelated arbitrary rate.
 
 [3]
 

 V. THE “GOOD FAITH” REQUIREMENT
 

 We cannot tell exactly what the Bankruptcy Court did on the issue of whether “the plan has been proposed in good faith” under section 1325(a)(3) of Chapter 13. Despite the fact that this subsection says only that the wage earner plan must be “proposed” in good faith, not that the debt in question be incurred in good faith, it is clear from the record that the Bankruptcy Court assessed the automobile payment plan in light of the debtor’s pre-plan conduct in creating the debt. The Bankruptcy Court found that the debtor puffed her income somewhat on her loan application but not so egregiously as to constitute fraud or dishonesty. Because, however, the integrity of the debtor’s conduct in securing the loan was questionable, the Bankruptcy Court stated at the confirmation hearing that it would refuse to confirm a plan that reduced her car payments below the contract price. Yet in its written opinion, the Bankruptcy Court in effect reduces the interest rate on the loan from the contract rate of 21% to a rate of 10%. In light of its comments at the confirmation hearing and in other parts of its written opinion, it is unclear why the Bankruptcy Court changed its mind. We, therefore, remand the case to the Bankruptcy Court for clarification on this subject as well.
 

 On the “good faith” issue the creditor and the debtor appear to have diametrically opposed positions. The creditor says that the debt in question was fraudulently obtained and that a plan composing such a debt is necessarily in bad faith. The debtor claims that under the good faith provision the Court can only look to see whether the proposed plan or arrangement is made in good faith, i.e., whether it is in line with the debtor’s inability to pay, and not whether the debt was incurred in good faith.
 

 The “good faith” requirement is neither defined in the Bankruptcy Code nor discussed in the legislative history. The
 
 *432
 
 phrase should, therefore, be interpreted in light of the structure and general purpose of Chapter 13. Obviously the liberal provisions of the new Chapter 13 are subject to abuse, and courts must look closely at the debtor’s conduct before confirming a plan. We should not allow a debtor to obtain money, services or products from a seller by larceny, fraud or other forms of dishonesty and then keep his gain by filing a Chapter 13 petition within a few days of the wrong. To allow the debtor to profit from his own wrong in this way through the Chapter 13 process runs the risk of turning otherwise honest consumers and shopkeepers into knaves. The view that the Bankruptcy Court should not consider the debtor’s pre-plan conduct in incurring the debt appears to give too narrow an interpretation to the good faith requirement.
 
 See, e.g., Matter of Kull,
 
 12 B.R. 654, 659 (S.D.Ga.1981) (among the facts a court should consider to determine whether a debtor has acted in good faith are “the circumstances under which the debtor contracted his debts and his demonstrated bona fides, or lack of same in dealing with his creditors.”)
 

 One way to refuse to sanction the use of the bankruptcy court to carry out a basically dishonest scheme under Chapter 13 is to deny confirmation to the proposed plan. When the debtor’s conduct is dishonest, the plan simply should not be confirmed. Unless courts enforce this requirement, the debtor will be able to thwart the statutory policy denying discharge in Chapter 7 cases for dishonesty.
 

 Another way to deal with the problem when the conduct is questionable but is not shown to be dishonest, as the Bankruptcy Court found it to be in the instant case, is to require full payment in accordance with the contract. This is the position the Bankruptcy Court apparently intended to take until it wrote the last paragraph of its opinion. On remand the Bankruptcy Court should make clear whether it is, in fact, taking this position and state on the record its reasons for its decision on the good faith issue.
 

 Accordingly, the judgment of the District Court is reversed and the case remanded for further proceedings consistent with this opinion.
 

 [1]
 

 . Section 1325, Title 11, is as follows:
 

 (a) The court shall confirm a plan if—
 

 (1) the plan complies with the provisions of this chapter and with other applicable provisions of this title;
 

 (2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;
 

 (3) the plan has been proposed in good faith and not by any means forbidden by law;
 

 (4) the value, as of the effective date of the plan, of property to be distributed under the plan of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;
 

 (5) with respect to each allowed secured claim provided for by the plan—
 

 (A)the holder of such claim has accepted the plan;
 

 (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
 

 (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
 

 (C) the debtor surrenders the property securing such claim to such holder; and ■
 

 (6)the debtor will be able to make all payments under the plan and to comply with the plan.
 

 (b) After confirmation of a plan, the court may order any entity from whom the debtor receives income to pay all or any part of such income to the trustee.
 

 [2]
 

 . On a secured consumer debt, the Code does not authorize the court to assess such interest on the value of the collateral and also charge the debtor in the unsecured claim with the contract rate of interest on the principal, thereby doubling up on interest. Thus the Bankruptcy Court below erred when it initially con
 
 *430
 
 firmed a plan which would have required the debtor to pay 10% interest on the liquidation value of the collateral in addition to requiring full payment of the principal plus the original 21% interest as contracted for in the original agreement. As the statement of facts will indicate, the court later withdrew this ruling.
 

 [3]
 

 . The District Court noted that it could not include future or unmatured interest in the “allowed unsecured claim.” This appears to be a correct reading of § 502(b) and § 1305. This rule on unsecured claims does not preclude adjusting the market rate on the secured claim up or down, however, when there is a substantial difference between the market rate and the rate the parties agreed on by contract. The Bankruptcy Court should have leeway to adjust the market rate on secured claims based on special circumstances. But when the Bankruptcy Court deviates from the market rate, it should have good reasons for doing so, and it should explain these reasons.