**In re Vincent A. KOPFSTEIN, Debtor.**

**Bankruptcy No. 583–1182.**

United States Bankruptcy Court,
N.D. Ohio.

Dec. 14, 1983.

Cecilia M. Martaus, Cleveland, Ohio, for Ohio Bell.

James A. Merlitti, Akron, Ohio, for debtor.

Jerome Holub, Akron, Ohio, Chapter 13 Trustee.

## FINDING AS TO MOTION TO DISMISS

H.F. WHITE, Bankruptcy Judge.

This matter is before the Court on the Motion to Dismiss the Chapter 13 proceeding as filed by The Ohio Bell Telephone Company (hereinafter "Ohio Bell") on September 2, 1983. The motion came on for hearing on October 17, 1983. A memorandum in opposition to the Motion was filed on November 10, 1983.

Ohio Bell raises two arguments in favor of the Motion to Dismiss debtor's petition. Ohio Bell first argues that the petition has been filed in bad faith. It also argues that the debtor's Plan attempts to reject a collective bargaining agreement without meeting the standards established for such a rejection.

Debtor, Vincent A. Kopfstein, is a Directory Representative for Ohio Bell. As such, it is debtor's job to solicit advertisements for the phone book published annually by Ohio Bell. In his capacity as a Directory Representative, debtor is a member of The Communications Workers of America Union (hereinafter "CWA") and is subject to the collective bargaining agreement which that union entered into with Ohio Bell on Au-

gust 22, 1980. Debtor is compensated by Ohio Bell on both a salary and a commission basis. The commission itself is paid out to the employee prior to the advertisement being paid for. This commission would be subject to charge-back, if the ad is cancelled or if the customer does not pay for the first forty-five days of billing by Ohio Bell.

In the instant case, debtor was paid the sum of $30,736.83 in May 1982 as commission for an advertisement purchased by A.A. Action in April 1982. No part of the fee for said advertisement has ever been paid by A.A. Action. Accordingly, in July 1983, Ohio Bell notified debtor that it intended to charge-back the entire commission paid him on the A.A. Action account. Debtor then filed suit in Summit County Common Pleas Court for a preliminary injunction which suit was dismissed on August 12, 1983 due to debtor's failure to exhaust the grievance procedures outlined in the collective bargaining agreement. The Chapter 13 petition herein was filed on August 17, 1983. The Plan filed therewith proposes a 100 percent payment to all unsecured creditors, including Ohio Bell.

Ohio Bell relies on the decision of the Sixth Circuit Court of Appeals in *Memphis Bank v. Whitman,* 692 F.2d 427 (6th Cir. 1982) for its argument that the petition was filed by debtor in bad faith and should be dismissed. *Memphis Bank* deals with confirmation of the Plan and the issue of good faith as it relates to confirmation. Even though this case has not yet come before the Court for confirmation of the proposed Plan, the statements made by the Sixth Circuit Court of Appeals relative to the issue of good faith are instructive herein.

In *Memphis Bank,* the creditor was alleging that its debt had been fraudulently obtained and that a Plan which proposes to discharge such a debt in a Chapter 13 proceeding is made in bad faith. In reversing the decision of the District Court, the Sixth Circuit Court of Appeals stated that:

> Obviously the liberal provisions of the new Chapter 13 are subject to abuse, and courts must look closely at the debtor's conduct before confirming a plan. We

should not allow a debtor to obtain money, services or products from a seller by larceny, fraud or other forms of dishonesty and. then keep his gain by filing a Chapter 13 petition within a few days of the wrong. To allow the debtor to profit from his own wrong in this way through the Chapter 13 process runs the risk of turning otherwise honest consumers and shopkeepers into knaves. The view that the Bankruptcy Court should not consider the debtor's pre-plan conduct in incurring the debt appears to give too narrow an interpretation to the good faith requirement. *Memphis Bank v. Whitman, supra,* at 432.

In line with this decision, this Court in *In re Troyer,* 24 B.R. 727 (Bkrtcy.N.D.Ohio 1982) held that a debtor's petition must be dismissed where a substantial portion of the debt scheduled in the petition had been incurred through a criminal conversion by the debtor-husband through a fraudulent commodities investment scheme.

Here, there have been no allegations made that the debt to Ohio Bell was incurred in bad faith. No fraud or dishonesty was involved on the part of debtor in the incurring of this debt. The debt arose solely due to the failure of Ohio Bell's customer, solicited by debtor, to pay the charges for advertising to Ohio Bell. Ohio Bell has not attempted to show that the pre-plan conduct of debtor, which resulted in the claim in question, was anything less than honest and businesslike. Indeed, although this Court makes no finding with respect to the same, allegations were made at the hearing that it was the actions of Ohio Bell regarding installation of phone lines which were less than satisfactory and resulted in A.A. Action refusing to pay for the advertising. Thus unlike *Memphis Bank,* no fraud or dishonesty has been alleged or proven by Ohio Bell. Unlike the situation in *Troyer,* the debt herein did not .arise because of the criminal actions of the debtor. *In re Troyer, supra.*

The Court in *Memphis Bank* held that where a finding of bad faith is made, the Bankruptcy Court should either require 100

percent of the debt found to have been incurred in bad faith to be paid through the Plan or dismiss the petition. The primary motivation behind such a finding is, however, as noted, the determination that the particular debt in question was incurred through fraud or dishonesty on the part of the debtor. At the very least, some questionable conduct is required before a finding may be made of bad faith. In the present case, no such finding may be made. Accordingly, the decision in *Memphis Bank* does not apply. Moreover, even if it did, debtor has proposed to pay 100 percent to all his creditors, which payment is one of the alternatives set forth in *Memphis Bank* as a means of circumventing the finding of bad faith.

The second issue raised by Ohio Bell in support of its motion is the argument that debtor is either circumventing or rejecting the terms of the collective bargaining agreement entered into by and between Ohio Bell and The Communications Workers of America Union by virtue of his Plan. The Court finds that this argument is not well-taken.

The contract in question was executed on August 22, 1980 by Ohio Bell and The Communications Workers of America Union. Among other items, the contract so executed contained provisions regarding payment of commissions to directory representatives and charge-backs on commissions where authorized under the terms of that same contract. That contract also provides the method for settling disputes arising relative to charge-backs on commissions.

As the validly authorized union for debtor and his coemployees, CWA was authorized to contract on behalf of its employees. It had the right and power to make contracts with the appropriate companies regarding the terms and conditions of employment for the employees who were members of the union. *Journeymen Barbers, Hairdressers & Proprietors International Union of America v. Ector*, 203 N.E.2d 370, 32 Ohio Op.2d 497, 95 Ohio Law Abs. 270 (Cuy.Cty.C.P.1964). Once the contract was executed, the labor union had a property right in the contract. *Id.* In order to be binding, and in accordance with fundamental contract law, the contract had to be accepted by the parties named in the contract—here, the union and Ohio Bell. *Hamilton Foundry & Machine Co. v. International Molders & Foundry Workers Union of North America*, 193 F.2d 209 (6th Cir. 1951). Of course, a necessary corollary of this rule would be that only the parties named in the contract may terminate that contract after it has been executed.

11 U.S.C. section 365 allows a trustee to reject an executory contract. This section has been interpreted so as to allow the rejection of a collective bargaining agreement. See for example, *In re Bildisco*, 682 F.2d 72 (3d Cir.1982), cert. granted, —— U.S. ——, 103 S.Ct. 784, 74 L.Ed.2d 992 (1983). Ohio Bell's argument that debtor's Plan is an attempt to reject the collective bargaining agreement herein ignores the fact that debtor is not a party to the contract and has no ability to reject or terminate the same. Although debtor as a member of the union is bound by the terms of the collective bargaining agreement, he may not reject that agreement. Only the employer or union may attempt to reject a collective bargaining agreement through their *own* bankruptcy.

Debtor is varying the terms of the labor agreement through the terms of his Chapter 13 Plan. Under the union's agreement with Ohio Bell, debtor would be required to pay back the commission through deductions from future commissions at the rate of 100 percent of the first commission check after the charge-back is made and fifty percent of each commission check thereafter until full satisfaction is made. Based on the representations of the parties herein, charge-back under this method would take approximately eighteen months to two years. Under the terms of the Chapter 13 Plan, however, the charge-back will take five years. The grant to Congress under the Constitution to pass laws regarding bankruptcies includes the right to impair contracts affected by a bankruptcy. *Hanover National Bank v. Moyses*, 186 U.S. 181,

22 S.Ct. 857, 46 L.Ed. 1113 (1902). This right includes the minimal impairment of the collective bargaining agreement which will occur by virtue of debtor's Chapter 13 Plan.

As the validity of the claim is not at issue at this time, this Court concurs in the results of the preliminary injunction in the Common Pleas Court that the debtor is obligated to proceed under the collective bargaining agreement and exhaust the grievance remedies provided therein. Both parties at the hearing indicated to the Court that these procedures are being taken. Therefore, the Court at this time cannot find that the debtor is attempting to avoid the provisions of the labor contract. This monetary dispute between the parties does come within the provisions of the definition of a "claim" as defined under 11 U.S.C. section 101(4)(A) and Ohio Bell does come within the definition of a "creditor" as set forth under 11 U.S.C. section 101(9)(A).

Chapter 13 of the Bankruptcy Reform Act of 1978 is intended "to enable an individual, under court supervision and protection, to develop and perform under a plan for the repayment of his debts over an extended period". H.R.Rep. No. 95–595, 95th Cong., 1st Sess. (1977) at 118, U.S.Code Cong. & Admin.News 1978, p. 5787, 6059. The protection afforded by the Bankruptcy Court under this Chapter "relieves the debtor from indirect and direct pressures from creditors, and enables him to support himself and his dependents while repaying his creditors at the same time." H.R.Rep. No. 95–595, *supra,* U.S.Code Cong. & Admin. News 1978, p. 6079. This protection afforded a debtor will necessarily impede the rights of creditors to carry out the full rights which they may have under individual contracts or agreements. Nonetheless, it was Congress' belief that all individuals would be best served through the system ultimately proposed and approved in the Bankruptcy Reform Act of 1978. That debtor has chosen to avail himself of these protections does not result in an immediate finding of bad faith nor a determination that the filing was intended to circumvent a valid collective bargaining agreement. Many creditors are in some manner injured through the filing of a bankruptcy petition by one of their debtors.

Therefore, it is the conclusion of this Court that Ohio Bell's Motion to Dismiss must be denied.