In the Matter of Mickey Marion BUT-
LER and Mary Josephine Butler,
d/b/a Butler Package Liquor, Debtors.

**ST. JOSEPH WHOLESALE LIQUOR
CO., Claimant,**

v.

**Mickey Marion BUTLER and Mary
Josephine Butler, Respondents.**

**Bankruptcy No. 84–02040–W–13.**

United States Bankruptcy Court,
W.D. Missouri, W.D.

Oct. 12, 1984.

Opinion on Denial of Rehearing
Nov. 14, 1984.

Bill Connely, General Manager, St. Joseph Wholesale Liquor Co., St. Joseph, Mo., for claimant.

Maurice B. Soltz, Soltz & Shankland, Kansas City, Mo., for respondents.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER ALLOWING CLAIMANT'S CLAIM IN THE SUM OF $210.68 AS A SEPARATELY CLASSIFIED CLAIM TO BE PAID 100%

DENNIS J. STEWART, Bankruptcy Judge.

Claimant seeks allowance of a claim based upon purchases made from it by the

debtors shortly before bankruptcy under circumstances which he contends evidence a lack of intention of the debtors to pay for the purchases. The debtors defend on the equitable grounds that the claimant violated the automatic stay to collect after the commencement of these chapter 13 proceedings the amount of an insufficient funds check previously issued by the debtors in the sum of $312.08.

The joined issues came on before the court for hearing on September 11, 1984, whereupon the claimant appeared personally and without counsel and the debtors appeared by Maurice B. Soltz, Esquire, their counsel. The evidence which was then adduced demonstrated that the debtors had, prior to bankruptcy, written a check in the sum of $312.08 in payment on account to the claimant; that the check was not honored by the drawee bank; that, after the date of bankruptcy, a state prosecution was commenced in which the debtors were charged under Missouri criminal statutes with passing the insufficient funds check; that, under the pressure of this prosecution, the debtors paid claimant the sum of the insufficient funds check; that, within 25 days of the date of filing of the within bankruptcy petition, the debtors purchased some $210.68 worth of supplies and goods from the claimant; that they first contacted their counsel respecting the taking of bankruptcy on June 25, 1984; and that they filed their chapter 13 petition on the same date.

■ On the basis of the foregoing factual outline, it cannot be concluded that the claimant violated the automatic stay in respect of the chain of events which led up to the payment by the debtors of the insufficient funds check. The commencement and prosecution of the state criminal action, without more, did not violate the automatic stay. See section 362(b)(1) of the Bankruptcy Code, excepting from the ambit of the automatic stay "the commencement or continuation of a criminal action or proceeding against the debtor." Further, in this district, the bankruptcy court does not enjoin state criminal actions based on charges of insufficient funds checks. See the opinion of the Honorable Joel Pelofsky in *In re Wagner*, 18 B.R. 339 (Bkrtcy.W.D. Mo.1982). See also the opinion of district judge Clark in *Matter of Anson*, Civil Action No. 81–5022–CV–SW (W.D.Mo. Apr. 13, 1981), observing that the debtor has an opportunity to vindicate his rights in the state court criminal action and that that ordinarily obviates the necessity for an injunction. And even those cases which hold that such a prosecution is enjoinable also hold that it is enjoinable only if it is shown that the prosecution was merely used as a method for collecting an otherwise dischargeable debt. See *In re Penny*, 414 F.Supp. 1113, 1115 (W.D.N.C.1976) ("These facts demonstrate that the 'criminal' proceedings were not designed to vindicate the rights of the people of North Carolina. They were instituted to collect a debt."). There is really no evidence in this case, however, that the state court prosecution was merely a pretext for collecting the amount of the insufficient funds check. Although the prosecution was terminated and dismissed when the debtors paid the claimant the amount of the check, there is no evidence that the prosecution was commenced and continued only to achieve this result.

■ Further, it appears from the evidence that the subject indebtednesses were not dischargeable. They were incurred shortly before bankruptcy. At the time they were incurred, according to the evidence which has been presented, the debtors must have been considering filing bankruptcy; and, further, the evidence shows with some clarity that, at the time the debts were incurred, the debtors were insolvent and had little or no funds in their bank accounts and were unable to meet their debts as they became due. Under such circumstances, the authorities hold with some uniformity that the indebtednesses for purchases made when there is no ability to pay in prospect are nondischargeable under section 523(a)(2) of the Bankruptcy Code. See, e.g., 1A Collier on

Bankruptcy para. 17.16, pp. 1638–1640.1 (1976), to the following effect:

> "A mere promise to be executed in the future is not sufficient to make a debt nondischargeable, even though there is no excuse for the subsequent breach. A misrepresentation by the bankrupt of his intention, however, may constitute a false representation within the exception. Thus, a purchase of goods by a bankrupt who does not intend to pay therefor, constitutes a false representation, ... *To require an overt misrepresentation where hopeless insolvency makes payment impossible is an unduly restricted interpretation of the purposes of the Act.*" (Emphasis added.)

See also the recent decision of the distinguished bankruptcy judge Joel Pelofsky in *In re Pittman*, 41 B.R. 382, 383 (Bkrtcy.W.D.Mo.1984), to the following effect:

> "A consumer using ... credit ... is held to imply a willingness and an ability to pay for the purchases ... If such willingness and ability are lacking, the use ... is fraudulent and the resulting debt nondischargeable."

Accordingly, in a chapter 7 case, the debts which are the subject matter of this proceeding would not be dischargeable under the provisions of section 523(a)(2) of the Bankruptcy Code.

The debtors, however, contend that, even if the debts would have been dischargeable in a chapter 7 proceeding, they are nondischargeable in a chapter 13 proceeding because section 1328 of the Bankruptcy Code contains no provision for the nondischargeability of indebtednesses created by fraud. But, as a matter of confirming a plan, the case authority holds that courts may consider the circumstances under which the debt was created in determining whether it may not be given a separate classification requiring 100% payment. See, e.g., *Memphis Bank & Trust Co. v. Whitman*, 692 F.2d 427, 432 (6th Cir.1982), to the effect that, when the debtor's conduct is "questionable," the court may either deny confirmation of the plan, or else, as an alterna-

tive, "require full payment in accordance with the contract."

It is therefore, for the foregoing reasons,

ORDERED that the claimant's claim in the sum of $210.68 be, and it is hereby, allowed as a separately classified claim to be paid 100%.

## ON MOTION FOR REHEARING

This court, after notice and a hearing in this chapter 13 proceeding formerly entered its order in this matter on October 12, 1984, allowing the claim of the claimant in the sum of $210.68 to be paid 100% under the doctrine of *In re Whitman*, 692 F.2d 427 (6th Cir.1982), because of conduct by the debtors which would have made the debt nondischargeable in chapter 7 proceedings. In so doing, this court rejected a defense predicated by the debtors upon equitable principles and which was to the effect that the claimant had violated the rule of *In re Penny*, 414 F.Supp. 1113 (W.D.N.C.1976), and the automatic stay by collecting through state criminal proceedings an insufficient funds check in the amount of $312.08 after the date of bankruptcy and despite the written admonition of counsel for debtors that such collection would be a violation of the automatic stay.

In rejecting the defense thus raised, the court, in the order of October 12, 1984, made the following observations:

> "The commencement and prosecution of the state criminal action, without more, did not violate the automatic stay. See section 362(b)(1) of the Bankruptcy Code, excepting from the ambit of the automatic stay 'the commencement or continuation of a criminal action or proceeding against the debtor.' Further, in this district, the bankruptcy court does not enjoin state criminal actions based on charges of insufficient funds checks. See the opinion of the Honorable Joel Pelofsky in *In re Wagner*, 18 B.R. 339 (Bkrtcy.W.D.Mo.1982). See also the opinion of district judge Clark in *Matter of Anson*, Civil Action No. 81–5022–CV–SW (W.D.Mo. Apr. 13, 1981), observing that the debtor has an opportunity to

vindicate his rights in the state court criminal action and that that ordinarily obviates the necessity for an injunction. And even those cases which hold that such a prosecution is enjoinable also hold that it is enjoinable only if it is shown that the prosecution was merely used as a method for collecting an otherwise dischargeable debt. See *In re Penny*, 414 F.Supp. 1113, 1115 (W.D.N.C.1976) ('These facts demonstrate that the "criminal" proceedings were not designed to vindicate the rights of the people of North Carolina. They were instituted to collect a debt.') There is really no evidence in this case, however, that the state court prosecution was merely a pretext for collecting the amount of the insufficient funds check. Although the prosecution was terminated and dismissed when the debtors paid the claimant the amount of the check, there is no evidence that the prosecution was commenced and continued only to achieve this result.

"Further, it appears from the evidence that the subject indebtednesses were not dischargeable. They were incurred shortly before bankruptcy. At the time they were incurred, according to the evidence which has been presented, the debtors must have been considering filing bankruptcy; and, further, the evidence shows with some clarity that, at the time the debts were incurred, the debtors were insolvent and had little or no funds in their bank accounts and were unable to meet their debts as they became due."

It is the contention of the debtors that these findings are clearly erroneous be-cause the claimant testimonially admitted that it was his intention, in instigating the state court criminal proceedings, to achieve restitution of the amount of the insufficient funds check rather than to send the debtor to jail.[1] But, assuming that the correct legal standard to be applied under the rule of *In re Penny, supra,* is whether the motive behind the prosecution is to enforce the state criminal laws or simply to gain restitution, the decisional authority interpreting *Penny, supra,* holds that it is the motives of *both* the creditor and the prosecutor which are to be evidenced. "Since *Penny,* several courts have construed *Penny* to say [that] the underlying motives of the complainant creditor *and county attorney* must be examined, and if these motives are to satisfy the debt, then the criminal proceeding must be enjoined as an attempt to enforce ... by indirection a debt which cannot be enforced directly at the State or Federal level." *In re Barnett,* 15 B.R. 504, 509 (Bkrtcy.D.Kan.1981).[2] (Emphasis added.) In this action, there was no evidence at all respecting the motives of the state prosecuting attorney. Otherwise, if the matter is to be determined on the basis of the creditor's motive alone, it has been observed that "the creditor's motives are almost always to satisfy the debt owed to him." *Id.* at 509. Yet, the whole purpose of drawing out a standard for determination of when state prosecutions should be enjoined has assertedly been to select only those which somehow offend the bankruptcy laws. Under the standard contended for by the debtor, however, every prosecution after bankruptcy based upon an insufficient funds check issued before bankruptcy would have to be enjoined. But

---

1. In material part, in their "application for rehearing," the debtors state that "the creditor, after receiving (notice of the automatic stay) issued criminal proceedings against the Debtors; that said creditor forced the Debtors to pay the insufficient funds check in full outside the chapter 13 proceeding; and under the evidence elicited in Court on September 11, 1984, the creditor's agent specifically stated that he did not want the Debtors in jail, but simply desired to obtain payment of the insufficient funds check."

2. The *Barnett* decision, while summarizing the prior cases focussing on motive, nevertheless rejects motive as the controlling factor and holds that, if the *result* is to effect collection of a dischargeable debt, the state prosecution is enjoinable. That decision is distinguishable from the action at bar in which a nondischargeable debt is involved. And its determination that the collection of a discharged debt is enjoinable is overruled by implication in the decisions of the United States Court of Appeals for the Fifth Circuit which are cited and explained, *infra,* in the text of this memorandum.

that is contrary to the express provisions of § 362(b)(1) of the Bankruptcy Code, generally excepting such prosecutions from the provisions and effect of the automatic stay.

Consequently, the currently governing court of appeals decisions on this subject seem to rule out any possibility that a bankruptcy court can have any power to enjoin a state insufficient funds check prosecution. In *United States v. Carson*, 669 F.2d 216 (5th Cir.1982), the United States Court of Appeals for the Fifth Circuit held that a federal court may, as a condition of probation, require a criminal offender to make restitution to his victim for losses caused by the offense for which he was convicted even though the debt occasioned by the offense has been discharged in bankruptcy. Subsequently, in *Barnette v. Evans*, 673 F.2d 1250, 1253 (11th Cir.1982), another panel of the same court seized upon the precedent of *United States v. Carson, supra,* to enunciate the principle that such a criminal prosecution as that now in issue does not violate any federal right. "If restitution of a debt discharged in bankruptcy may be imposed as part of a federal sentence, certainly such restitution may also be imposed by state courts. No federal right of the debtor is impinged, whether restitution is discretionary or mandatory." 673 F.2d at 1253. Consequently, it is said that, if the debtor believes that the state court prosecution is not in good faith, that contention may be raised in the state court trial. "If Barnette believed the prosecution for theft was a subterfuge for collection of a debt, he could have raised the issue in the state criminal proceeding." *Id.*

This latter principle appears to be the keynote of the decisions in this district. Judge Russell G. Clark, in *Matter of Willis*, Civil Action No. 80–5050–CV–SW (W.D.Mo. Apr. 13, 1981), stated as follows:

"Most notable of those facts is that, at the time he sought relief from the district court, the plaintiff debtor had already been tried and convicted on charges of passing a bad check and was facing the enforcement of a sentence of confinement if he did not make good on the check. *See* 414 F.Supp. at 1114. This circumstance was found to be very significant by Judge Arnold in *In Re Porter*, 462 F.Supp. 370 (E.D.Ark.1978), a case much like this one in which plaintiff debtor sought an order enjoining an ongoing bad check criminal prosecution. In distinguishing *Penny, supra,* Judge Arnold noted that the debtor before him, unlike Penny, still had the 'opportunity to defend vigorously in state court'. 462 F.Supp. at 372. He added that there was 'no reason to believe that the state court [would] ignore or fail to recognize any legitimate defenses he [the debtor] raises'. *Id.* Like the plaintiff in this case, the debtor in *Porter* contended that he had a valid defense to the bad check charges. Since the acceptance of such a defense by the state court and the acquittal of the debtor would obviate any need for an injunction of the state court's proceeding, Judge Arnold declined to issue injunctive relief: 'The rights [plaintiff] seeks to vindicate in this Court *may* be vindicated in the state court, without unnecessary interference by a federal tribunal.' 462 F.Supp. at 373 (emphasis added.)"

Similarly, Judge Pelofsky, in *In re Wagner*, 18 B.R. 339, 341, 342 (Bkrtcy.W.D.Mo. 1982), stated:

"Debtor does not show that he cannot be given a fair trial or present defenses in the state court proceedings. The evidence as to the reasons for the prosecution do not persuade the Court that the state court actions are motivated by policies which contravene the thrust and purpose of the Bankruptcy Code."

In this action, however, the debtors, rather than raise this issue in the state court proceedings or actually seek an injunction in a timely manner, paid the claimant the face amount of the insufficient funds check and only now, in retrospect, seek relief from the bankruptcy court. But under the principles set forth in *Barnette v. Evans, supra,* and in the *Willis* and *Wagner* decisions, *supra,* the *fait accompli* of payment appears to have waived any complaint

about the state court prosecution which might have been made in the course of that prosecution.

Even, however, if, despite these authorities,[3] the court must rely on the *Penny* rule (which was alone cited by the court in the challenged order because it did not appear that the debtors met the minimum standard even for application of that most liberal rule), a finding of bad faith on the part of the creditor is still, under the circumstances, of no aid to the debtors. For, in the challenged order, this court also found that the purchases for which the insufficient funds check was made were made at a time near bankruptcy while the debtors were sufficiently insolvent as to lack an intention to pay. As is conceded in the course of the *Penny* decision, "[o]f course, if the debt is ultimately found to be *not* dischargeable, no federal purpose would be served by continuing to enjoin the state prosecution, notwithstanding the court's strong opinion that such proceedings abuse the process of the courts." 414 F.Supp. at 1115.

Therefore, for the separate and independent reasons that (1) the prosecuting officer's motives have not been shown to be only to collect the underlying debt; (2) the federal law, as set forth in *Barnette v. Evans, supra,* no longer countenances enjoining state prosecutions under the rule of *Penny, supra,* (3) the debtors waived by payment any complaint respecting the state court prosecution; and (4) the debts paid by the check were nondischargeable, it is hereby

ORDERED that the debtors' motion for rehearing be, and it is hereby, denied.

---

**3.** Which this court would regard as binding at    this date.