**In the Matter of Patricia STAUFFER, Debtor.**

**CREDIT UNION OF JOHNSON COUNTY, Objecting Creditor,**

v.

**Patricia STAUFFER, Respondent.**

**Bankruptcy No. 85–00097–W–13.**

United States Bankruptcy Court, W.D. Missouri, W.D.

Nov. 6, 1985.

**560**

John R. Stonitsch, Kansas City, Mo., for debtor.

Bruce E. Strauss, Shockley, Reed & Koger, Kansas City, Mo., for objecting creditor.

Richard V. Fink, Kansas City, Mo., trustee.

## ORDER CONFIRMING DEBTOR'S CHAPTER 13 PLAN ON CONDITION OF FULL PAYMENT TO OBJECTING CREDITOR

DENNIS J. STEWART, Bankruptcy Judge.

This matter is now before the court on an objection to confirmation. The court, for the reasons stated below, has determined to confirm the plan on condition that it classify the objecting creditor so as to grant it 100% payment of the outstanding balance due it. This ruling was made under the doctrine of *Memphis Bank & Trust Co. v. Whitman*, 692 F.2d 427 (6th Cir. 1982), to the effect that the bankruptcy court may require, as a condition of confirmation, that a debtor pay 100% of any indebtedness occasioned by "questionable conduct."

The hearing on the debtor's motion for reconsideration was held on August 29, 1985. It was then the debtor's principal attempt and undertaking to demonstrate that she was without any intentional or reckless intent when she continued to make a great volume of credit charges right up to the time of her filing her petition for voluntary chapter 13 bankruptcy. In an attempt to show her lack of any mentation which could warrant a court in describing her conduct as "questionable" within the meaning of *Whitman, supra,* she testified that she had simply followed the advice of counsel in making credit purchases, who, according to her testimony, had told her that it was permissible under the law for her to use the credit cards right up to the time of the filing of the bankruptcy petition. Admittedly, however, she did not advise her then counsel—who is no longer her counsel and was not her counsel as of the date of the filing of these proceedings—that she had already greatly exceeded the credit limit on each of the credit cards and that, in fact, the issuing institutions had in each instance demanded return of the credit cards. Nor did she advise her former counsel that she had carefully used those cards and employed strategies and artifices to avoid them being taken up by the issuing institutions; that she had diligently avoided making charges which exceeded $75 (which she understood to be the maximum charge which merchants would allow without making inquiry of the issuing institution) even if it meant making multiple purchases at the same store on the same day; nor that she had no intention of making any payment for the purchases which she was making. Under the sparse set of circumstances which was disclosed to former counsel, that counsel advised the debtor that she could find nothing in the law which actually and affirmatively prohibited use of a credit card up to the time of filing, but that she did not believe it to be advisable and did not recommend it. This does not appear to have been an incorrect characterization of the applicable law under the circumstances which were then known to former counsel.[1] And it is certainly not a sufficient basis for absolving the debtor of any questionable intent under the doctrine of "advice of counsel." [2]

1. Ordinarily, one is not foreclosed or prohibited from incurring credit up to the time of bankruptcy, so long as it is with an intention to pay the debts when incurred. The inadvisability of incurring them is made plain by the possibility that they may be ultimately held to be nondischargeable under section 523 of the Bankruptcy Code and the debtor might conceivably be liable for other civil and criminal penalties for fraud. But the contemplation of bankruptcy at the time the debts are incurred does not necessarily mean that a debtor is without any intention to pay the charges, for they may later be reaffirmed by the debtor pursuant to § 524 of the Bankruptcy Code, or they may be fully paid under a chapter 13 plan, as in the case at bar.

2. "[A]dvice of counsel is not a defense when it is transparently plain" that the conduct is not protected under the law. *In re Mascolo,* 505 F.2d 274, 277 (1st Cir.1974).

In her additional testimony before the court, the debtor Patricia Stauffer went on to deny that she never had any intention of paying her debts. She stated that she and her then companion, John Owens, had reason to believe that Mr. Owens' parents would come through with a loan to aid them in paying off the excessive charges which were being incurred. Admittedly, however, the charges were incurred at a time when Mr. Owens' parents had already refused to extend loan money to the debtor and their son, and the debtor's belief was based upon the morally questionable tactic of getting into such an adverse economic situation, through the incurring of excessive credit card charges, that John's parents would feel compelled to loan the money to them which was necessary to pay the outstanding charges.

On the basis of the additional evidence thus adduced, this court can only reaffirm its belief that the rule of the *Whitman* case, *supra,* is applicable and that confirmation of the debtor's proposed plan must be conditioned upon its offering 100% payment to the objecting creditor. This court acknowledges that the *Whitman* rule has been criticized, as it is in the case now before the court, on the ground that it is without the power of a bankruptcy court to rewrite a debtor's plan and compel the debtors to adhere to the rewritten plan.[3] But such accusatory language ignores the fact that it is the inescapable function and duty of the bankruptcy court to demand, as a precondition of confirmation under the provisions of § 1325 of the Bankruptcy Code, that the plan conform to the "good faith" and other prerequisites of that statute. And the *Whitman* decision, *supra,* and its progeny simply hold that "good faith," in some cases, may require the full payment of certain debts as a prerequisite of the discharge in bankruptcy.

Whatever can be said of the hardship which this rule may work upon a debtor or a debtor's dependents, it is a rule whose abrasive effects seem altogether necessary if chapter 13 proceedings are not to become the means of excusing debts which are incurred by the most blatant forms of fraud. As the court in the *Whitman* case itself explains:

"Obviously the liberal provisions of the new Chapter 13 are subject to abuse, and courts must look closely at the debtor's conduct before confirming a plan. We should not allow a debtor to obtain money, services or products from a seller by larceny, fraud or other forms of dishonesty and then keep his gain by filing a Chapter 13 petition within a few days of the wrong. To allow the debtor to profit from his own wrong in this way through the Chapter 13 process runs the risk of turning otherwise honest consumers and shopkeepers into knaves. The view that the Bankruptcy Court should not consider the debtor's pre-plan conduct in incurring the debt appears to give too narrow an interpretation to the good faith requirement."

Under the facts which have been found above, moreover, and in this court's prior order, the rule of *Whitman, supra,* is squarely and unavoidably applicable. It is difficult to imagine a case which would fall more fully within the class of evils sought to be prevented by that rule than this one. This court, in reviewing the evidence offered in the initial hearing, has done so with an eye to determining some plausible way to permit confirmation of the debtor's plan without imposing the harsh requirement of 100% payment to the objecting creditor. But to mitigate this rule in any respect or degree in this case would be to condone the deliberate and flagrant conduct of the debtor in incurring the debts here in question; the calculated and careful manner in which the credit cards were used so as to avoid enforcement of the issuing

---

**3.** See Treister, IV Recent Bankruptcy Decisions, Second Supplement (January 1985—May 1985), p. 359, to the following effect:

"[In *Matter of Butler,* 45 B.R. 46 (Bkrtcy.W.D. Mo.1985) ], [t]he court found authority ... in

*Memphis Bank & Trust Co. v. Whitman,* 692 F.2d 427, 432 (6th Cir.1982), but it is submitted that nothing in the Code permits the court to rewrite a plan and to impose it on the debtor over his objection."

institution's order to surrender them; the attempt to settle the responsibility for the debts on relatives by reason of deliberately making them hopeless of payment by the debtor and her consort; and the ungallant attempt to pin moral responsibility for it all on former counsel, when the blatant character of the acts involved ruled out "advice of counsel" as a palatable defense.[4] This court in good conscience must retain some abiding faith that chapter 13 is not a device for escaping debts incurred in such a deliberate and calculated manner. It is therefore, accordingly,

ORDERED that the debtor's chapter 13 plan of arrangement be confirmed on the condition that payment in full is remitted to the objecting creditor.[5]

4. See note 2, *supra*.

5. The files and records in this case clearly demonstrate that the debtor is able to pay 100% the claims of the objecting creditor Credit Union of Johnson County (which warrants a separate classification because it has been demonstrated to be a liability created by fraud, see *Matter of Curtis*, 2 B.R. 43, 45 (Bkrtcy.W.D.Mo.1979). Under the plan as it now exists, the debtor proposes to limit her plan to a term of 36 months, over which she will pay a total of $9,000 to creditors.

By means of the simple artifice of extending the plan to the maximum 60 months, she can pay an additional $6,000 through the plan which may be distributed to the objecting creditor, Credit Union of Johnson County. The same creditor has filed a proof of claim in the total sum of $6,734.95. The $6,000 payable during the final 24 months of a 60-month plan plus the 10% of $6,234.95 which is proposed to be paid during the first 36 months of the plan should total substantially 100% of the claim.