**In re Robert W. RIGGLEMAN, Jr. Terry Lynn Riggleman, Debtors.**

**Bankruptcy No. 3–86–02414.**

United States Bankruptcy Court, S.D. Ohio, W.D.

Feb. 5, 1987.

James A. Hensley, Huber Heights, Ohio, for plaintiff.

Joyce M. Deitering, Dayton, Ohio, for debtor.

George W. Ledford, Englewood, Ohio, Ch. 13 Trustee.

## DECISION AND ORDER ON CONFIRMATION

WILLIAM A. CLARK, Bankruptcy Judge.

This matter is before the court on the objection to confirmation filed by Curtis Pierson, creditor. The parties submitted the case to the court on December 16, 1986 upon the memorandum of counsel for Curtis Pierson (creditor), the arguments of debtors' counsel and Chapter 13 Standing Trustee relying on *Memphis Bank & Trust Co. v. Whitman*, 692 F.2d 427 (6th Cir. 1982), records of this court, and a certified copy of Dayton Municipal Court Judgment and Referee's Report and Recommendations in Case No. 85–CVG–4357.

Debtors filed this Chapter 13 case on September 17, 1986. The debtors' plan provided for payment of 10% on some $19,000 in unsecured claims. The judgment of Curtis Pierson is listed as an unsecured claim in the amount of $6,925. This creditor filed a proof of claim in a previous Chapter 13 case filed by these debtors on February 21, 1986. Debtors' first Chapter 13 case was dismissed on April 24, 1986 for debtors' failure to attend the meeting of creditors.

The claim of Curtis Pierson arose as a result of a judgment in the Dayton Municipal Court of $6,925 consisting of $1225 for delinquent rent, $4,200 for damages and $1,500 for punitive damages. The judgment was rendered on October 24, 1985 following a trial before a referee of the Dayton Municipal Court. Creditor contends that the issues were fully litigated in the Dayton Municipal Court. That Court adopted the Referee's Report finding that defendant willfully tore down Pierson's six foot redwood fence and cut down approximately forty-two (42) evergreen and shade trees, that "defendant's conduct evidences malice and punitive damages are consequently properly awardable." The creditor further contends that the court judgment of willful and malicious injury to the property of creditor is a claim for a nondischargeable debt under 11 U.S.C. § 523(a)(6), and objects to confirmation of debtors' plan.

Debtor contends that the objection to confirmation should be denied because regardless of the judgment their plan was filed in good faith and the issue is controlled by the case of *Memphis Bank & Trust Co. v. Whitman,* 692 F.2d 427 (6th Cir.1982).

It is clear from 11 U.S.C. § 523(a) that creditor's claim is nondischargeable in a Chapter 7 case and in a Chapter 13 case if debtor requested a "hardship" discharge under 11 U.S.C. § 1328(b). 11 U.S.C. § 523(a) provides:

(a) A discharge under section 727, 1141, or *1328(b)* of this title does not discharge an individual debtor from any debt—(emphasis added)

\* \* \* \* \* \*

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;—

.   .   .   .   .

11 U.S.C. § 523(a)(6)

■ A careful reading of the section 523(a) shows that a malicious injury is dischargeable under 11 U.S.C. § 1328(a):

(a) As soon as practicable after completion by the debtor of all payments under the plan, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt—

(1) provided for under section 1322(b)(5) of this title; or

(2) of the kind specified in section 523(a)(5) of this title.

■ In short, a Chapter 13 discharge will discharge all debts except (1) claims not included in the plan, (2) certain long term obligations with payments due after the completion of the plan, and (3) alimony and child support obligations. *Memphis Bank & Trust Co. v. Whitman,* supra at 428.

■ Creditor contends also that the plan providing for discharge of a judgment for willful and malicious conduct should not be confirmed. This position accentuates the court's duty to examine the plan as to debtors' "good faith" in accordance with 11 U.S.C. § 1325(a)(3).

*Memphis Bank & Trust Co. v. Whitman, supra,* is the leading case in this Circuit on the issue of whether a plan has been proposed in good faith under section 1325(a)(3). It is important to recognize the distinction between "good faith" in incurring the debt and the "good faith" which is required in proposing a plan. It is the latter consideration which must be addressed. The court in the *Whitman* case at page 430, requires the Bankruptcy Court to

[d]etermine whether the debtor's proposed plan; based on his ability to pay and conduct, is reasonable and in good faith.

To prevent the abuse of a Chapter 13 plan, the conduct of the debtors before confirmation of a plan must be examined.

The "good faith" requirement is not clearly defined. Courts must review all the circumstances and decide each case on an overall impression created by the conduct of the debtor before the plaintiff's proposed plan and examine the plan. Other factors for examination include the debt-

ors' ability to pay and his disposition to pay all of his disposable income into the plan. Additional non-exclusive factors for consideration are enumerated in *Ravenot v. Rimgale,* 669 F.2d 426 (7th Cir.1982), *U.S. v. Estus,* 695 F.2d 311 (8th Cir.1982), and *Flygare v. Boulden,* 709 F.2d 1344 (10th Cir. 1983).

For the Sixth Circuit *Whitman, supra,* gives the following guidance at page 432:

> One way to refuse to sanction the use of the bankruptcy court to carry out a basically dishonest scheme under Chapter 13 is to deny confirmation to the proposed plan. When the debtor's conduct is dishonest, the plan simply should not be confirmed. Unless courts enforce this requirement, the debtors will be able to thwart the statutory policy denying discharge in Chapter 7 cases for dishonesty.
>
> Another way to deal with the problem when the conduct is questionable but is not shown to be dishonest, as the Bankruptcy Court found it to be in instant case, is to require full payment in accordance with the contract.

From the certified copy of the Municipal Court judgment, Referee's Report and Recommendations and the case files in this court, certain facts are apparent. The Dayton Municipal Court found that certain acts of Robert Riggleman, Jr. were malicious causing $4,200 in damage to creditor. The judgment provided for $1,500 in punitive damage for such conduct and ordered $1,225 for unpaid rent. Defendants proposed a plan which includes various other claims, none of which is larger than the total judgment of this objecting creditor with the exception of the secured claim of Manufacturers Hanover Mortgage Corporation. Debtors filed their initial Chapter 13 case February 21, 1986, which was dismissed in April, 1986. Debtors filed the present Chapter 13 on September 17, 1986, after the mortgagee filed a foreclosure suit in August.

Debtors listed a large number of other unsecured claims including many small ones for living expenses, the claim for utilities of $1,300, hospital services debt of $2,402.88 and state income tax of $964.13. These debts indicate the debtors' general depressed financial condition. This deteriorated financial condition vitiates the argument that the Chapter 13 filing is an abuse of the system and only used to discharge the large Dayton Municipal Court judgment.

The case file reveals that Robert W. Riggleman is now self employed as a security consultant earning an average of $2,194.42 per month. His former employer was a local police department. He earned only $11,448 in 1985, which indicates an improvement in earning power during 1986. If his self employment earnings continue to increase, as is indicated by the recent record, he will be able to contribute more to the plan. However, the plan as proposed fails to provide for prospective increases in earnings.

A review of the entire case from the material available to the court, demonstrates the debtors are making an effort to repay something on unsecured debts to the extent possible. Although the percentage is only ten percent of the unsecured debt, the plan proposes payments for sixty (60) months. The filing appears to have resulted from a general poor financial situation and not solely to extinguish the judgment of Pierson. The facts here are distinguishable from those where a court has found that the conduct was outrageous and clearly abused the purposes and spirit of Chapter 13, *In re Chura,* 33 B.R. 558 (Bankr.D. Colo.1983).

■ Weighing all the facts, the court finds that the proposed plan does not constitute a lack of good faith nor an abuse of the intent of Chapter 13. However, an unsecured creditor having objected to confirmation, the plan cannot be confirmed as now proposed because the requirements of 11 U.S.C. § 1325(b)(1)(A) and (B) are not met. 11 U.S.C. § 1325(b)(1) provides:

> [t]hen the court may not approve the plan unless, as of the effective date of the plan—
>
> \* \* \* \* \* \* \*

(B) the plan provides that all of the debtor's projected disposable income to be received.... will be applied to make payments under the plan.

11 U.S.C. § 1325(b)(1)(B)

As the court held in the case of *In re Krull,* 54 B.R. 375 (Bankr.D.Colo.1985)

[t]he amended plan must provide that all of the debtor's purported disposable income must be paid to the trustee for distribution pursuant to the plan ... require the debtor to pay 50 percent of any net earnings, above and beyond the amount scheduled ...

In this case debtor has not provided for increases in disposable earnings which are too uncertain to project as of the effective date of the plan. But an amendment providing for semi-annual earning and expense statements and appropriate increase in contributions will make the plan confirmable.

IT IS THEREFORE ORDERED that confirmation of the plan is DENIED.

IT IS FURTHER ORDERED that debtors submit an amended plan within twenty (20) days of the date of this order providing that (1) all debtors' disposable income be paid to the trustee, (2) in addition to the present proposed Plan payments, debtor shall pay fifty (50) percent of any future net earnings exceeding the amount now scheduled to the Chapter 13 trustee for distribution, and (3) debtor shall submit an earnings and expense statement to the trustee semi-annually beginning April 30, 1987 for the purpose of determining the appropriate level of payments.

Curtis Pierson is granted twenty (20) days following the date of this order within which to file a proof of claim herein.

IT IS SO ORDERED.