**In re Kenneth J. DUNNING and Antoinette M. Dunning, Debtors.**

**Bankruptcy No. 92–13338K.**

United States Bankruptcy Court, W.D. New York.

April 5, 1993.

Edward J. Jozwiak III, Albrecht, Maguire, Heffern & Gregg, P.C., Buffalo, NY, for debtor.

Richard Leff, Buffalo, NY, for AT & T Universal Card Services Corp.

MICHAEL J. KAPLAN, Chief Judge.

## Introduction

AT & T Universal Card Services Corp. ("AT & T") brought this matter on by objecting to the confirmation of the Debtors' Chapter 13 plan. Confirmation is denied without prejudice to the filing of an amended plan.

■ A nominal payment plan is not proposed in "good faith" when it ignores current evidence of increased self-employment earnings and puts an objecting creditor to the task of (1) finding a way to monitor the debtors' future earnings and business expenses and (2) moving to increase the payments, when and if the motion is supportable.

## Facts

The Debtors are husband and wife. Mr. Dunning is a self-employed sales representative for various lamp manufacturers.[1] His business requires extensive travel throughout New York. His net personal taxable income has fluctuated from approximately $56,000 in 1990 (on a $94,000 gross) to $30,000 in 1991 (on a $55,000 gross), to $35,000 in 1992 (on a $54,000 gross). This year the debtor projects his net personal income to be approximately $51,700. To a certain extent Mr. and Mrs. Dunning can control their 11 U.S.C. § 1325(b) "disposable" income by controlling Mr. Dunning's travel expenses [2] and the amount that Mrs. Dunning works. (Until recently, she did not work. She now works part-time as a "fashion consultant.")

AT & T is an unsecured creditor. Mr. Dunning opened a Mastercard credit card account with AT & T in March of 1991. He incurred over $10,000 in charges on that account during May of 1991, $5900 of which were cash advances. It is alleged that no payments had ever been made on that account as of September 29, 1992, when the couple filed a joint Chapter 13 petition. Their plan proposes to pay secured debt in full, of course, but to unsecured nonpriority creditors it proposes only 1% of the amount owed, all to be paid over a period of 60 months. (The Debtors would pay $1659 quarterly to the Trustee.)

AT & T objected to confirmation of the plan, arguing that it was not proposed in good faith as required by 11 U.S.C. § 1325. The creditor argued that the plan was proposed merely to avoid the possible determination of non-dischargeability of the AT & T debt under 11 U.S.C. § 523(a) if the Debtors had filed a Chapter 7 case. During hearing on March 10, 1993, an additional issue arose as to whether the Debtors had committed all their disposable income to the plan, given the fact that Mrs. Dunning had begun to work and Mr. Dunning had netted in the first two months of 1993 approximately $9,000. Annualized, these changes would generate an "extra" $7,000 or more over the $51,700 "projected" earnings in the first year alone. AT & T questions whether at least some portion of any such increase should be committed to creditors.[3] The Debtors think not, since continued good fortune is not assured and they need a margin of comfort.

## Analysis

■ One of the requirements for confirmation of a Chapter 13 plan under section 1325 is that the Court find that the

---

1. He does business partially through his one-person Subchapter S corporation.

2. For example, when "on the road" he may choose whether to spend a night in a hotel or to return home.

3. *In re Marshall,* 111 B.R. 325 (Bankr.D.Montana 1990).

plan is proposed in "good faith." 11 U.S.C. § 1325(a)(3). The Bankruptcy Code does not define that term. *In re Easley*, 72 B.R. 948 (Bankr.M.D.Tenn.1987). There is no set formula to determine whether a plan is proposed in good faith. Courts examine a number of factors in making such a determination, but need not delineate such a formula. *In re Krull*, 54 B.R. 375 (Bankr. D.Colo.1985). Only by examining the individual circumstances of each debtor and the debtor's responsiveness to bona fide concerns of creditors can it be determined whether a plan is proposed in good faith.

The Court is convinced that the Dunnings' plan is not proposed in good faith. Although they commit to a plan of maximum duration (60 months), they propose only a 1% payout to unsecured creditors and no provision for an upward adjustment despite a demonstrated increase in short-run profits. It is true as argued by the Debtors that any creditor may move to increase the plan payments under section 1329(a) if circumstances improve. But where there is evidence currently before the Court that the debtors' net disposable income may have increased but no provision is made to share that benefit with creditors,[4] the fact that an unsecured creditor may file a motion under section 1329 does not automatically cloak a plan in a mantle of good faith.[5] Both parties and the Chapter 13 Trustee are advised to refer to the *Krull* case as an example of one possible method of addressing fluctuating income—a projected "floor" and a sharing of net earnings above that floor. *Krull* 54 B.R. at 378.[6] The Court must emphasize that *Krull* merely establishes one method of dealing with a situation similar to that at bar. Devising alternative plans is left to arms-length negotiations between debtors and objecting creditors.[7]

On the other hand, the Court flatly rejects the argument that the possibility that the AT & T debt might be non-dischargeable in a Chapter 7 case precludes the Debtors from proposing any Chapter 13 plan. The Dunnings have a mortgage, a car loan, taxes and other debts (in addition to the AT & T charges) included in their plan, for which Chapter 13 relief (as opposed to Chapter 7 relief) may be warranted. As a result, this does not appear to be a case where a Chapter 13 petition was filed merely to avoid a determination that the AT & T debt would be dischargeable in a Chapter 7. *Easley* 72 B.R. at 952.

### Conclusion

Confirmation of the Debtors' Chapter 13 plan is denied without prejudice to the filing of an amended plan within 10 days.

SO ORDERED.

---

**4.** Present evidence of increased earnings here is not like the case of a wage-earner's "uncertain" or "speculative" prospects for "overtime" or promotion, that courts have said could be ignored for section 1325 purposes; see *In re Killough*, 900 F.2d 61 (Fifth Cir.1990). This is a self-employment case in which gross earnings depend in part upon how hard the debtors want to work, and in which what might be "personal" expenses that a wage-earner might have to forego while in a Chapter 13 (such as a car or a vacation), can be subsumed into business expenses.

**5.** It was not until 1984 that Congress gave creditors the right to seek an upward modification of a confirmed Chapter 13 plan, based on the debtor's improved circumstances. That provision addresses post-confirmation changes, not the debtor's good faith at time of confirmation.

When the evidence at time of confirmation bespeaks disposable income above that projected for plan purposes, the realization of that increased disposable income is not merely a "post-confirmation" change in circumstances.

**6.** See also *In re Riggleman*, 76 B.R. 111 (Bankr. S.D.Oh., 1987).

**7.** As further examples, a plan may call for periodic reports to creditors so that they may monitor the debtors' finances, or a plan may set forth staggered increases in payments to unsecured creditors, bearing in mind the fact that the debtor may more readily modify the plan downward, than may the creditor seek to modify it upward. Rather than setting down requirements that might govern all self-employment cases, the Court invites counsel to propose solutions appropriate to the facts of each case.