**In re Russell CARVER and Norma Carver, d/b/a Farmers and Ranchers, Debtors.**

**Bankruptcy No. 585–00196.**

United States Bankruptcy Court, D. South Dakota.

June 4, 1986.

Dennis W. Finch, Finch & Viken, Rapid City, S.D., for petitioners.

James S. Nelson, Rapid City, S.D., James B. Holden, Sherman & Howard, Denver, Colo., for respondents.

## MEMORANDUM DECISION

PEDER K. ECKER, Bankruptcy Judge.

### Introduction

This is before the Court on a motion to vacate the Court's previous order and a motion for new trial filed on behalf of Russell and Norma Carver ("debtors") by Attorney Dennis W. Finch on February 11, 1986.[1] This matter was originally before the Court on a motion for relief from stay filed on behalf of Howard L. and Reino W. Heikkila ("Heikkilas") by Attorney James S. Nelson on January 21, 1986. At a January 28, 1986, hearing, the Court ruled in favor of the Heikkilas, holding that Bankruptcy Code Section 108(b), and not Section 362(a), applied to a land installment contract foreclosure process once the redemption process had begun to run. A hearing to reconsider this question was held in Rapid City, South Dakota, on February 25, 1986, and the Court took the matter under advisement.

### Background

Debtors filed for relief under Chapter 11 of the Bankruptcy Code on December 3, 1985. At the time of filing, the Heikkilas and the debtors had been extensively involved in a land installment contract foreclosure matter. Debtors own and operate a ranching and farming business in western South Dakota.

On January 2, 1979, the debtors purchased a 5,920-acre ranch from the Heikkilas through a contract for deed. The contract fixed the purchase price at $592,000, allocating, in part, $394,000 for real estate, $75,000 for the house located on the property, and $50,000 for ten percent (10%) of the Heikkilas' mineral interests. The contract reserved to the Heikkilas an undivided ninety percent (90%) interest, including future interests, in "all minerals of whatsoever nature," including the right to "prospect for, mine and/or drill for said minerals." In return, the Heikkilas agreed to pay for any property damage and to arbitrate in the event of any disagreement arising therefrom.

Under the terms of the contract, payment was to be made by the assumption of a $12,908.70 debt on a state land contract, a downpayment of $159,091.31, and annual

---

1. *See* Bankr.R.P. 9023.

installments of principal and interest in the amounts of $41,202.00 beginning on January 3, 1980, and, thereafter, on the third day of January each year for nineteen years. The rate of interest stipulated in the contract was 7½%; however, upon default in making any payment, interest would accrue at a rate of 11% until the default was cured.

The contract also contained a default clause which read, in pertinent part:

In the event the Buyers default in the performance of any of the terms, covenants, conditions or obligations imposed upon them by this agreement, the Parties agree that the Sellers shall have the option to declare all deferred balances immediately due and payable, subject to the following conditions.

If the Buyers fail to timely pay or breach any of the covenants or conditions or obligations imposed upon them then the Sellers shall give the Buyers sixty (60) days notice of such default during which time the Buyers may make such payment or correct the breach of any term, covenant, or conditions or obligation imposed upon them, making the contract current, but if such action is not taken by the Buyers during this sixty (60) day term, then the Sellers shall have the right to retake possession of the property described in Part III(A) and Part III(B) hereof, together with the duty on the part of the Buyers to assign back to the Sellers or their heirs or successors in interest all of their rights in the Contract for Sale with the State of South Dakota as set forth in Paragraph III or if the Contracts have been fully performed and patents been issued from the State of South Dakota to the Buyers then they shall execute deeds back to the Sellers.

Debtors failed to make their January 3, 1984, installment payment. On January 18, 1984, the Heikkilas notified the debtors by mail of their intention to foreclose if payment was not made within the sixty-day grace period. The debtors insisted that they only temporarily withheld payment because the Heikkilas refused to arbitrate when a disagreement over property damage arose. A formal demand to arbitrate was made on March 5, 1984, and the Heikkilas apparently agreed to arbitration on March 20, 1984.

When the payment was not received, the Heikkilas instituted suit for strict foreclosure on the contract in state court under S.D.C.L. Ch. 21–50 on March 23, 1984. Eleven days thereafter, the debtors tendered the 1984 payment in full with accrued interest, but the Heikkilas refused to accept the tender and proceeded to foreclosure.

A trial was held in July, 1984, and, on October 19, 1984, a judgment was entered in favor of the Heikkilas. In accordance with S.D.C.L. Ch. 21–50, the trial court further ordered that the debtors may redeem the property upon payment to the Heikkilas within ninety (90) days following the entry of the judgment of the total balance due and owing on the contract, including interest, in the amount of $448,-901.52.

The debtors thereafter appealed to the South Dakota Supreme Court and, with thirteen days left prior to the expiration of the redemption period, obtained a stay pending appeal. This was conditioned on the receipt of a $28,500 letter of credit.

On November 13, 1985, the South Dakota Supreme Court affirmed the trial court's foreclosure decree. On December 3, 1985, which was the filing date, the debtors petitioned for rehearing and, on December 20, 1985, the South Dakota Supreme Court denied the petition for rehearing and remitted the case to state court.

At the February 25, 1986, hearing, the Court granted the debtors a relief from stay to pursue their arbitration remedy due to property damage arising from mineral excavation.

*Issue*

The principal issue raised is whether the Section 362(a) stay applies to South Dako-

ta's land installment foreclosure process once the judicially decreed redemption period has begun to run but before the process is complete.

### Law

As to this issue, the Court finds that, under South Dakota's land installment foreclosure law: 1) the clerk of court's certification process constitutes a continuation of judicial proceedings within the scope of 11 U.S.C. § 362(a)(1); 2) a transfer of the debtor's equitable property interest constitutes an enforcement of a pre-petition judgment against the debtor or his property within the scope of 11 U.S.C. § 362(a)(2); and 3) the clerk of court's certification process constitutes an act to obtain property of the estate within the scope of 11 U.S.C. § 362(a)(3). The Court, therefore, holds that Bankruptcy Code Section 362(a) stayed the land installment contract foreclosure process in the instant case. Based on this, the Court further holds that the contract at issue should be treated as an executory contract and, therefore, Section 365, not Section 108(b), governs the time for curing defaults under the contract.

Bankruptcy Code Section 362(a) prohibits the "commencement or continuation . . . of a judicial, administrative, or other proceeding," the "enforcement" of a judgment obtained prior to bankruptcy, or any other "act" to obtain possession of property of the estate. 11 U.S.C. § 362(a). The scope of the automatic stay is very broad. *United States v. Reynolds*, 764 F.2d 1004, 1006 (4th Cir.1985); *United States v. Norton*, 717 F.2d 767, 771 (3d Cir.1983).

When reviewed within the context of their own state's land installment contract forfeiture or foreclosure laws, the courts are divided on whether 11 U.S.C. § 362(a), and not 11 U.S.C. § 108(b),[2] applies once the forfeiture or foreclosure redemption period has begun to run but before the process is complete. Courts holding in the affirmative include: *In re Carr*, 52 B.R. 250 (Bkrtcy.E.D.Mich.1985); and *In re McCallen*, 49 B.R. 948 (Bkrtcy.D.Or.1985). *See also In re St. Amant*, 41 B.R. 156 (Bkrtcy.D.Conn.1984). Courts holding in the negative include: *In re Crawley*, 53 B.R. 40 (Bkrtcy.D.Minn.1985); *In re Vacation Village Ltd. Partnership*, 49 B.R. 590 (Bkrtcy.D.Iowa 1984); and *In re Owens*, 27 B.R. 946 (Bkrtcy.E.D.Mich.1983). This Court notes that these courts are in jurisdictions in which *Johnson v. First National Bank of Montevideo, Minn.*, 719 F.2d 270 (8th Cir.1983), *cert. denied*, 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984), was either controlling or followed.

To properly consider this issue, the Eighth Circuit's analytical framework in *Johnson* is useful. At the outset, however, it is noted that *Johnson* only involved the tolling of a *statutory* mortgage redemption period and not a *judicially decreed* contract foreclosure and, therefore, is not controlling. *See* 719 F.2d at 270. Unlike a mortgage, this Court has held that a contract for deed is an executory contract under Bankruptcy Code Section 365. *In re Speck*, 50 B.R. 307 (Bkrtcy.D.S.D.1985), *aff'd*, 62 B.R. 61 (D.S.D.1985).

In *Johnson*, the court held that Section 362(a) did not apply to Minnesota's statutory redemption period because an automatic transfer of property, following expiration of a statutory period of redemption, does not constitute an "act," "proceeding," or the "enforcement" of a right within the meaning of Section 362(a). 719 F.2d at 276. When considering a similar matter under

---

**2.** Bankruptcy Code Section 108(b) reads as follows:

> Except as provided in subsection (a) of this section, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
> (2) 60 days after the order for relief.

South Dakota's mortgage redemption laws, this Court followed the *Johnson* holding. *See In re Donaldson*, 43 B.R. 506 (Bkrtcy. D.S.D.1984).

Underlying the *Johnson* holding was the observation:

"That Congress intended § 362(a) to prohibit only certain types of affirmative action is evidenced by the terms [used in § 362(a)] and corresponding failure to use terms which appropriately describe the suspension or extension of a statutory time period...." (citations omitted) 719 F.2d at 276.

*Johnson* analysis was premised on the identity of the debtor's "remaining interest in the mortgaged property following a foreclosure sale." *Id.* Using this premise, the Court's inquiry is focused on what "remaining interest" a contract vendee has under South Dakota's land installment contract foreclosure law once the judicially decreed redemption period has begun to run.

■ Under South Dakota law, a contract for the purchase of real estate works an equitable conversion. The contract vendor holds title in trust for the purchaser and the vendee holds equitable title and has use and possession of the property. *First Federal Sav. and Loan, Etc. v. Lovett*, 318 N.W.2d 133, 135 (S.D.1982). South Dakota's land installment foreclosure process is essentially a three-step process: 1) a vendor brings a foreclosure suit under S.D. C.L. § 21–50–1; 2) a trial is held and the state court sets a certain time period in which the vendee must comply with the contract terms (may include payment of an accelerated amount), S.D.C.L. § 21–50–3; and 3) if the vendee does not comply, the clerk of court must certify that the time has expired and the vendee has not complied with the terms of the contract, S.D. C.L. § 21–50–6. When the foreclosure process is complete, the parties are placed in the same legal position as if the contract had not been made. *State v. Darling*, 39 S.D. 558, 165 N.W. 536 (1917). What this means is the state court's providing a time period for complying with the contract terms effects no change of title. In the

instant case, the vendees-debtors filed prior to the completion of the foreclosure process. Using the *Johnson* terminology, the contract vendees' "remaining interest" at the time of filing is thus a holder of equitable title in real estate.

This equitable interest is distinguishable from a mortgagor's statutory redemption interest. Under South Dakota law, a mortgage foreclosure sale and the issuance of a sheriff's certificate thereunder operate to extinguish all of the mortgagor's interest in and to the real property involved, except bare legal title coupled with the statutory right of redemption within the time allowed by statute. *In re Rice*, 42 B.R. 838, 843 (Bkrtcy.D.S.D.1984).

Having identified the remaining interest, the next analytical step taken by *Johnson* was to ascertain "whether that interest constitutes property of the estate." 719 F.2d at 276. Under Section 541(a), equitable title unquestionably constitutes property of the estate. 11 U.S.C. § 541(a); *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). *See also* 4 *Collier on Bankruptcy* ¶ 541.06 at 541–26 (15th ed. 1985).

Following the *Johnson* analytical scheme, the next step is to determine whether 11 U.S.C. § 362(a), and not 11 U.S.C. § 108(b), applies. *See* 719 F.2d at 276. As said before, when reviewed within the context of their own state's land installment contract forfeiture or foreclosure laws, the courts are divided on this issue. Courts holding in the affirmative include: *In re Carr*, 52 B.R. 250 (Bkrtcy.E.D.Mich. 1985); and *In re McCallen*, 49 B.R. 948 (Bkrtcy.D.Or.1985). Courts holding in the negative include: *In re Crawley*, 53 B.R. 40 (Bkrtcy.D.Minn.1985); *In re Vacation Village Ltd. Partnership*, 49 B.R. 590 (Bkrtcy.D.Iowa 1984); and *In re Owens*, 27 B.R. 946 (Bkrtcy.E.D.Mich.1983).

In holding that Section 362(a) applies at least in Chapter 11 and Chapter 13 proceedings, Judge Spector, in *In re Carr*, emphasized the differences in a vendee's equitable property interest and a mortgagor's

statutory redemption right. 52 B.R. at 253–62. In that case, the vendee-debtor filed for relief under Chapter 13 the last day (90th day) of the judgment of forfeiture redemption period. *Id.* at 253. Judge Spector essentially found that, unlike a pre-petition mortgage foreclosure sale in which the only interest that passes to the estate is a statutory right of redemption, if the judgment of forfeiture redemption period has not expired, equitable title passes to the estate. *Id.* at 253–62. Moreover, he insightfully noted that a finding that Section 362(a) does not apply once the forfeiture process begins will only cause a "well-advised purchaser to file bankruptcy at the first hint of trouble, thus setting the stage for an unseemly race to the [bankruptcy] courthouse, instead of [encouraging] attempts at informal workouts before the last-ditch bankruptcy filing." *Id.* at 257. Ultimately, he determined, because under Michigan law a judgment of forfeiture is not final until the redemption period expires, that:

> [A]ny further proceedings to obtain possession constitute the continuation of a judicial proceeding against the debtor within the intended meaning of § 362(a)(1). Likewise, any automatic transfer of the debtor's property interest occasioned by the expiration of the redemption period would constitute the enforcement of a pre-petition judgment against the debtor or his property, § 362(a)(2), and an act to obtain possession of property of the estate, § 362(a)(3). Our decision is consistent with the spirit, if not the letter, of *Glenn* [*In re Glenn*, 760 F.2d 1428 (6th Cir. 1985), followed the *Johnson* holding]: where there is no substantive right to cure a default and deaccelerate a debt under state law, the stay is ineffective as to any acts to obtain possession of property; but once the debtor comes under the protection of the Bankruptcy Code with an equitable ownership interest in the property, the stay affords him the opportunity to protect that interest via the means provided by the Bankruptcy Code.

*Id.*

*In re Carr*'s holding is consistent with the United States Supreme Court's policy analysis in *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515. For Judge Spector to hold otherwise would be contrary to *Whiting Pools'* policy because he essentially would be allowing an automatic postpetition termination of the estate's equitable title interest and severely limiting the debtor's access to property needed for an effective reorganization.

While addressing a Section 542(a) turnover question in a Chapter 11 proceeding which involved seized property by the Internal Revenue Service, the Supreme Court discussed the policies which underly Section 541. In holding that Section 541 should be broadly construed, Justice Blackmun, writing for the majority, observed that:

> In proceedings under the reorganization provisions of the Bankruptcy Code, a troubled enterprise may be restructured to enable it to operate successfully in the future.... By permitting reorganization, Congress anticipated that the business would continue to provide jobs, to satisfy creditors' claims, and to produce a return for its owners. Congress presumed the assets of the debtor would be more valuable if used in a rehabilitated business than if "sold for scrap." The reorganization effort would have a small chance of success, however, if property essential to running the business were excluded from the estate. Thus, to facilitate the rehabilitation of the debtor's business, all property must be included in the reorganization estate.

*Id.* at 203, 103 S.Ct. at 2312.[3]

The Court also recognized that, as against having an equitable interest, it may

---

**3.** Justice Blackmun continued:
This authorization extends even to property of the estate in which a creditor has a secured interest. Although Congress might have safeguarded the interests of secured creditors outright by excluding from the estate any proper-

make a difference on whether the estate only has a bare legal title interest.[4]

In holding that Section 362(a) applies, Judge Perris, in *In re McCallen,* looked more to whether a further affirmative act was required to terminate the vendee-debtor's equitable interest at the time of filing. 49 B.R. at 948. In that case, the vendors had already obtained a decree of strict foreclosure. *Id.* The day before the judicially decreed redemption period was to expire, the debtors filed a petition for relief under Chapter 11. *Id.* Under Oregon law, to terminate the vendee's equitable interest, a vendor must apply to the state court for entry of a final decree of strict foreclosure. *Id.* at 951. (Presumably, this is done after the redemption period expires.) Upon finding that an application for entry of strict foreclosure was an affirmative act to eliminate the debtors' equitable ownership interest, the court held that Section 362(a) applied. *Id.* Another reason the court found for Section 362(a) applicability is that "[Section 108(b)] does not apply to curing defaults in executory contracts. Section 365 specifically governs the time for curing defaults in executory contracts, and thus, it controls here." (quoting from *Moody v. Amoco Oil Co.,* 734 F.2d 1200, 1215 (7th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 386, 83 L.Ed.2d 321) *Id.* at 952.

While reaching a different result under their own state's land installment foreclosure or forfeiture laws, the Minnesota and Iowa courts approached the question of Section 362(a) applicability similar to that of Judge Perris. *See In re Crawley,* 53 B.R. 40 (Bkrtcy.D.Minn.1985); *In re Vacation Village Ltd. Partnership,* 49 B.R. 590 (Bkrtcy.D.Iowa 1984). Both courts, however, found Section 362(a) inapplicable

because no further "acts" were required for contract termination. *See also In re Owens,* 27 B.R. 946 (Bkrtcy.E.D.Mich. 1983).

### Conclusion

 Based on the foregoing, the Court finds: 1) the clerk of court's certification constitutes a continuation of judicial proceedings within the scope of 11 U.S.C. § 362(a)(1); 2) a transfer of the debtor's equitable property interest constitutes an enforcement of a pre-petition judgment against the debtor or his property within the scope of 11 U.S.C. § 362(a)(2); and 3) the clerk of court's certification constitutes an act to obtain property of the estate within the scope of 11 U.S.C. § 362(a)(3). This Court, therefore, holds that Bankruptcy Code Section 362(a) stayed the land installment contract foreclosure process in the instant case. Based on this, the Court further holds that the contract at issue should be treated as an executory contract and, therefore, Section 365, not Section 108(b), governs the time for curing defaults under the contract. Under Section 365(d), the debtors have until confirmation of their plan to affirm the contract and make arrangements for curing default. *See id.* at 952.

Accordingly, based on the foregoing, this Memorandum Decision constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Bankr.R.P. 7052 and 9014 and F.R.Civ.P. 52. Counsel for the debtors is directed to submit an appropriate order in accordance with Bankr.R.P. 9021.

---

ty subject to a secured interest, it chose instead to include such property in the estate and to provide secured creditors with "adequate protection" for their interests. At the secured creditor's insistence, the bankruptcy court must place such limits or conditions on the trustee's power to sell, use, or lease property as are necessary to protect the creditor. The creditor with a secured interest in property included in the estate must look to [Bankruptcy Code Section 363(c)] for protection,

rather than to the nonbankruptcy remedy of possession.

Both the congressional goal of encouraging reorganizations and Congress' choice of methods to protect secured creditors suggest that Congress intended a broad range of property to be included in the estate. (citations omitted) *Id.* at 203–04, 103 S.Ct. at 2312–13.

**4.** *Id.* at 204, n. 8, 103 S.Ct. at 2313 n. 8.