In re Richard C. KRATZ, Deborah E. Kratz, Debtors.

Bankruptcy No. 2-88-01555.

United States Bankruptcy Court, S.D. Ohio, E.D.

Oct. 28, 1988.

**128**

Stephen K. Yoder, Bricker & Eckler, Columbus, Ohio for Vendors, Robert D. and Elda M. Oliver.

Steven R. Fansler, West Liberty, Ohio, for debtors.

Frank M. Pees, Worthington, Ohio, Chapter 12 Trustee.

## ORDER ON OBJECTION TO CONFIRMATION

BARBARA J. SELLERS, Bankruptcy Judge.

### I. Jurisdiction

This matter is before the Court on an objection to confirmation of the Chapter 12 plan proposed by Richard C. Kratz and Deborah E. Kratz. The objection to confirmation, filed by Robert D. Oliver and Elda M. Oliver, is premised upon 11 U.S.C. §§ 1225(a)(1) and 365(d)(2). A hearing on this matter was conducted by the Court on July 25, 1988.

The Court has jurisdiction in this proceeding under 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This contested matter, relating to confirmation of a Chapter 12 plan, is a core proceeding in which this bankruptcy judge may enter a final order. 28 U.S.C. § 157(b)(2)(L).

### II. Preliminary Facts

On November 20, 1984, Richard and Deborah Kratz ("Debtors") purchased real estate from Robert and Elda Oliver ("Vendors"). The purchase was accomplished by executing an installment land contract (the "Contract"). Under the terms of the Con-tract, the payoff balance owed the Vendors is approximately $241,095. The Contract provides for semi-annual payments of $17,-000 each August 1 and February 1 until April 1, 1996, when the entire balance would be due.

The Debtors filed a petition under the provisions of Chapter 12 of the Bankruptcy Code on March 24, 1988. On that same date, the Debtors submitted their plan of reorganization (the "Plan"). Under the Plan, the Debtors propose to treat the Vendors as secured creditors. The Debtors propose to repay the Vendors $188,400, representing the value of the property, at the rate of 9% per annum, amortized over a 25 year period. The Plan proposes semi-annual payments of $9,553.44, commencing December 10, 1988, with the second installment due in 1989. Successive semi-annual payments are to be made in December and June of each year until June of 1996, when the entire remaining principal balance and accrued interest are to be paid in full.

### III. Issues Before The Court

Given the specific facts of this case, the Court is presented with the following issues:

a. Whether the Contract executed by the parties and recorded under the laws of the state of Ohio is an executory contract or in the nature of a financing device;

b. Whether the rate of interest provided under the Contract or the prevailing market rate of interest is the appropriate discount factor to be used under the Plan; and

c. Whether the Contract was terminated by the Debtors' failure to cure the default under the Contract within sixty (60) days of receiving notice of such default.

### IV. Findings of Fact and Conclusions of Law

#### A. *Executory Contract or Financing Device*

■ The first question to be resolved is whether a real estate installment sales contract should be treated as an executory

contract capable of assumption or rejection under 11 U.S.C. § 365 or as a security device in the form of a sale with a retained mortgage. The resolution of this issue is significant because of the varying ramifications arising from the characterization of the agreement as an executory contract or a security financing device.

If the Contract is an executory contract, under the provisions of the Bankruptcy Code, the Debtors must either assume or reject the Contract. 11 U.S.C. § 365(d)(2). Assumption of the Contract requires prompt cure of any default and adequate assurance of future performance under the Contract. 11 U.S.C. § 365(b)(1). And, if assumed, the Debtors cannot unilaterally modify the terms of the Contract.

In contrast, if the Contract is treated as a security device, the Debtors need not immediately cure any default. Rather, 11 U.S.C. § 1222(b)(2) provides that the Debtors may modify the payment terms of the Contract. And, to the extent the Vendors' claim exceeds the value of the collateral, such excess is treated as an unsecured claim. Therefore, as a practical matter, characterization of the Contract as a security device makes it less burdensome for the Debtors to retain the property in question.

The Vendors argue that, by definition, an installment land contract is clearly an executory agreement. Ohio Rev.Code Ann. § 5313.01 (Anderson 1981). As such, the Vendors contend that 11 U.S.C. § 365(d)(2) is applicable and the Debtors are required to either assume or reject the Contract in its entirety, without modification. The Vendors support this conclusion by noting that they are not obligated to transfer legal title until the Debtors have tendered all payments due. The Vendors further state that the drafters of the Bankruptcy Code recognized the executory nature of an installment land contract and acknowledged that it is legally different from either a mortgage or a leasehold interest. 11 U.S. C. §§ 365(i) and (j).

The question whether 11 U.S.C. § 365 applies to installment land contracts is controlled by federal law. *Hall v. Perry (In re Cochise College Park, Inc.)*, 703 F.2d 1339 (9th Cir.1983); *Benevides v. Alexander (In re Alexander)*, 670 F.2d 885 (9th Cir.1982). However, the issue should not be resolved without attention to state law. "State law is significant if the real estate contract creates ownership interests or security interests in property." *In re McDaniel*, 89 B.R. 861, 864 (Bankr.E.D. Wash.1988). Thus, this Court must initially determine, under Ohio law, what property interests, if any, are acquired by a vendee under an installment land contract.

Ohio has enacted legislation designed specifically to govern the creation and operation of installment land contracts. *See* Ohio Rev.Code Ann. § 5313 *et. seq.* (Anderson 1981). In particular, Section 5313.01(A) defines the meaning of "land installment contract." Section 5313.02(D) requires that every land installment contract conform to the formalities required by law for the execution of deeds and mortgages, and section 5313.02(C) states that the vendor shall record a copy of the contract within twenty days of its execution. Most importantly, section 5313.07 provides that if the vendee has paid a sum equal to, or in excess of twenty per cent of the purchase price, or has paid in accordance with the terms of the contract for five years, the vendor may recover possession of the property only by use of a proceeding for foreclosure and judicial sale of the foreclosed property. *See Cuyahoga Metropolitan Housing Authority v. Watkins*, 23 Ohio App.3d 20, 491 N.E.2d 701 (Ct.App. 1984).

Given this procedural requirement, the vendee clearly acquires property rights in the contract land when twenty per cent of the total price has been paid. The nature of those property rights is analogous to those of an owner; while the vendors' rights in the property are analogous to a security interest which is decreasing in value as the price (debt) is paid down. Considering the hybrid nature of the agreement, the degree of payment, and the statutory purpose for Chapter 12, the Court finds that where the vendee has paid more than twenty per cent of the contract price, an installment land contract is more appropri-

ately characterized as a financing arrangement and not an executory contract.

Having reached that conclusion, the question now becomes whether some overriding federal bankruptcy policy requires a different result. To date, the courts of this country have failed to agree on whether an installment land contract is an executory contract under section 365. The Bankruptcy Code does not define the term "executory contract." Section 365 of the Bankruptcy Code merely sets forth the treatment required for executory contracts in bankruptcy. As a result, many jurisdictions have turned to Professor Countryman's exhaustive analysis of the issue for guidance. *See* Countryman, *Executory Contracts in Bankruptcy*, (Part I) 57 Minn.L.Rev. 439 (1973); (Part II) 58 Minn. L.Rev. 479 (1974). In his seminal article Countryman stated:

> As Professor Williston has said, "All contracts to a greater or lesser extent are executory. When they cease to be so, they cease to be contracts." But that expansive meaning can hardly be given to the term as used in the Bankruptcy Act ... The concept of the executory conract in bankruptcy should be defined in the light of the purpose for which the trustee is given the option to assume or reject. [Footnotes omitted].

57 Minn.L.Rev. at 450. Countryman also proposed a definition of an executory contract. *Id.* at 460. Although arguably the definition that Congress had in mind when it enacted the Bankruptcy Code, *see* S.Rep. No. 95–989, p. 58 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5844, the Court of Appeals for the Sixth Circuit has adopted its own approach for resolving the question. The Court stated:

> The key, it seems, to deciphering the meaning of the executory contract rejection provisions, is to work backward, proceeding from an examination of the purposes rejection is expected to accomplish. If those objectives have already been accomplished, or if they can't be accomplished through rejection, then the contract is not executory within the meaning of the Bankruptcy Act.

*Chattanooga Memorial Park v. Still (In re Jolly)*, 574 F.2d 349, 351 (6th Cir.1978). The adoption of such an approach binds this Court, which is not free to chose an alternative.

In his article, Countryman further offered an opinion on whether a real estate installment sale contract is an executory contract within the terms of the Bankruptcy Act. Countryman stated that clearly "a contract under which the vendee still owes a material part of the purchase price and the vendor has not transferred title, and is not obligated to do so until that price is fully paid, is an executory contract." 57 Minn.L.Rev. at 469–470. Significantly, neither of the cases Countryman cites in support of this conclusion involve installment land contracts. Rather, both concern contracts which were in the nature of earnest money or option agreements. *Gulf Petroleum v. Collazo*, 316 F.2d 257 (1st Cir. 1963); *In re Swindle*, 188 F.Supp. 601 (D. Ore.1960). This Court finds such a factual distinction critical in rejecting Professor Countryman's conclusion.

The Court also notes Judge Rossmeissl's suggestion in *McDaniel* that Countryman's "analysis was not intended to apply to situations where the purchaser actually acquired an ownership interest in the property." *McDaniel*, 89 B.R. at 871. Judge Rossmeissl concludes that Countryman's remarks "should be limited to those contracts in which the purchaser obtained neither a legal nor equitable interest in the property." *McDaniel* at 871–872. Such a conclusion is noteworthy, given this Court's finding that these Debtors acquired a property right in the land under state law.

Finally, the Vendors argue that the drafters of the Bankruptcy Code recognized the executory nature of a contract for the sale of real property by enacting sections 365(i) and 365(j) of Title 11, United States Code. These sections provide exception for the treatment of non-debtor purchasers following rejection of contracts for the sale of real property. Given these provisions, it is argued that Congress considered that contracts for the sale of real

property would be generally treated as executory contracts.

This Court rejects that argument. Sections 365(i) and 365(j) appear to have been drafted specifically to correct an apparent injustice resulting from the decision in *In re New York Investors Mutual Group*, 143 F.Supp. 51 (S.D.N.Y.1956). *See In re Booth*, 19 B.R. 53, 55–56 (Bankr.D.Utah 1982). Therefore, despite the existence of these provisions, section 365 does not require that installment land contracts be treated as executory contracts if that is contrary to state law, but rather prescribes certain rights which flow to vendees if such contracts are found to be executory contracts.

This Court notes that section 365(i) is not emasculated by its ruling in the present case. It is conceivable that under certain circumstances land contracts may be executory contracts and that result may be required under state law. However, that is not the case under Ohio law once a foreclosure proceeding is required for a vendor to cut off the vendee's rights. Therefore, given the facts in this case, the Contract executed by the parties is not an executory contract which the Debtors must either assume or reject under section 365 of the Bankruptcy Code.

### B. *Interest Rate*

█ The second issue raised by the Vendors is the appropriateness and adequacy of the interest rate of 9% proposed by the Debtors as compensation to the Vendors for payment of their allowed secured claim over time. The Vendors contend it is well settled that the Debtors are required to pay the market rate of interest. The Vendors argue, however, that the interest rate proposed by the Debtors is substantially less than the prevailing market rate.

It is undisputed that the standard in this circuit for discount rates used to establish the present value of allowed secured claims repaid over time in reorganization settings is "in the absence of special circumstances ... the current market rate of interest used for similar loans in the region." *Memphis Bank & Trust Co. v. Whitman*

*(In re Whitman)*, 692 F.2d 427, 431 (6th Cir.1982). The Court in *Memphis Bank* reasoned that the market rate is the most appropriate interest rate because in theory the creditor is making a new loan to the debtor. *Id.* at 431.

The facts in the present case are analogous to those in *Memphis Bank.* The Debtors' plan creates, in essence, a new loan between the Vendors and the Debtors and a modification of the Vendors' claim. Such facts support the rationale expressed by the Sixth Circuit in *Memphis Bank.* Thus, this Court concludes that the prevailing market rate is the appropriate interest rate to be applied to determine the present value of the Vendors' allowed secured claim. However, the 9% rate proposed by the Debtors does not appropriately reflect the current market rate of interest for long term loans secured by a mortgage against real property. To determine the current market rate of interest, the Court refers the parties to its recent decision in *In re Neff,* 89 B.R. 672 (Bankr.S.D.Ohio 1988).

### C. *Cure under 11 U.S.C. § 108(b)*

█ The final issue to be resolved is whether the Contract was terminated by the Debtors' failure to cure the default under the Contract within sixty days of receiving notice of such default. The Vendors argue that, even if the Contract is determined not to be an executory contract, the Debtors have failed to cure the default under the Contract pursuant to section 108(b)(2). The Vendors contend that the Debtors were served with written notice of default. Pursuant to section 108(b) the Debtors had sixty days to cure that default. However, since the Debtors failed to cure the default, under section 108(b) the Contract is terminated.

In support of their position, the Vendors cite three bankruptcy decisions from the state of Montana. *In re Henke,* 84 B.R. 693 (Bankr.D.Mont.1988); *In re Eldorado,* 85 B.R. 555 (Bankr.D.Mont.1987); *In re Gomes Ranch,* 85 B.R. 558 (Bankr.D.Mont. 1987). Without questioning the legal conclusion reached in those cases, this Court finds them factually distinguishable and

therefore not applicable to the present case. The facts in the case at bar do not provide a situation where the debtors are attempting to toll or extend the redemption period. In reality, that period has not begun.

As noted above, the debtors have paid more than twenty percent of the total amount of the purchase price under the Contract. In light of this fact, under section 5313.07 of the Ohio Revised Code, the Vendors may recover possession of the property only by the use of a proceeding for foreclosure and judicial sale. To date the Vendors have not done so, and consequently the period in which the Debtors may redeem the property has not commenced. Therefore, it is premature to invoke the provisions of section 108(b) of the Bankruptcy Code at this time.

Further, this Court believes that applying section 108(b) as the Vendors suggest would be inconsistent with the provisions of sections 1222(b)(2) and (3). Those sections permit the Debtors to modify the rights of any holder of a secured claim and to cure or waive any default. The right to modify such secured claim or cure any default in the Contract under § 1222(b)(2) or (b)(3) does not cease until a foreclosure sale has taken place. *Justice v. Valley National Bank*, 849 F.2d 1078, 1084 (8th Cir.1988); *see also Federal Land Bank of Louisville v. Glenn (In re Glenn)*, 760 F.2d 1428, 1442 (6th Cir.) *cert. denied* 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985). Since a foreclosure sale has not been conducted in this case, the modification and cure provisions of section 1222(b)(2) and (3) are still applicable and would control in this situation.

Consistent with the foregoing, the Vendors' objection to confirmation is overruled on the executory contract issue and the issue of whether the Contract was terminated by the Debtors' failure to cure the default under the Contract within sixty (60) days of receiving notice of such default. The Vendors' objection to confirmation is sustained on the interest rate issue. Accordingly, confirmation of the Debtors' Plan must be, and the same is, hereby denied. The Debtors are given twenty (20) days to amend this plan to propose a rate which reflects the Court's findings and to serve such plan upon the Vendors.

IT IS SO ORDERED.